# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

FEDERAL TRADE COMMISSION,

                Plaintiff,

    v.

JOEL JEROME TUCKER, individually and as an officer of SQ Capital, LLC, JT Holdings, Inc., and HPD LLC,

SQ CAPITAL, LLC, a limited liability company,

JT HOLDINGS, INC., a corporation,

        and

HPD LLC, a limited liability company,

                Defendants.

Case No. 16-02816

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission, for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with Defendants' marketing, distribution and sale of counterfeit payday loans.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4.      The FTC is an independent agency of the United States Government created by

statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.      The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be

appropriate in each case, including the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b),

56(a)(2)(A).

**DEFENDANTS**

6.      Defendant Joel Jerome Tucker is a resident of Kansas and the principal officer

and owner of SQ Capital, LLC, JT Holdings, Inc., and HPD LLC.  Joel Jerome Tucker

formulated, directed, controlled, had the authority to control, or participated in the deceptive and

unfair acts and practices set forth in this Complaint.  In connection with the matters alleged

herein, Joel Jerome Tucker transacts or has transacted business in this district and throughout the

United States.

7.      Defendant SQ Capital, LLC ("SQ Capital"), is a limited liability company

organized in Missouri that lists 6299 Nall Avenue, Suite 100, Mission, Kansas 66202, as its

registered business address.  SQ Capital transacts or has transacted business in this district and

throughout the United States.

8.      Defendant JT Holdings, Inc. ("JT Holdings"), a corporation organized in Kansas,

is the sole member of SQ Capital.  Defendant JT Holdings listed 6299 Nall Avenue, Suite 100,

Mission, Kansas 66202, as its business address in its most recent corporate filing.  Before JT

Holdings adopted its current name in 2010, it was named Bahamas Marketing Group Ltd., BMG

Solutions Ltd., and Edata Solutions, Inc.  JT Holdings transacts or has transacted business in this district and throughout the United States.

9.      Defendant HPD LLC ("HPD") is a Wyoming limited liability company that lists its principal address as 2120 Carey Ave, Cheyenne, Wyoming 82001.

10.     Defendants SQ Capital, JT Holdings, and HPD have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have a common owner, officer, manager, business functions, and commingled funds. Because these corporations have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendant Joel Tucker has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the corporate defendants that constitute the common enterprise.

## COMMERCE

11.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

12.     When consumer debts that have been charged-off by the original creditors are marketed for sale to third parties, they are typically bundled into debt portfolios.  Debt sellers purchase and sell these debt portfolios for eventual collection by third-party debt collectors.  The documentation for the portfolios often includes one or more spreadsheets with tables that list details about individual debts in a portfolio, such as the identity of original creditors; consumers' names, addresses, phone numbers, and social security numbers; original account numbers;

original balances; interest rates; charge-off balances; charge-off dates; date the account was opened; and last payment date. Debt collectors use the information in such spreadsheets to identify debtors and demand repayment of the debts identified.

13.     Beginning in or about July 2014, Defendants marketed, distributed, and sold counterfeit debt portfolios that purport to identify consumers who have defaulted on payday loans.

14.     The counterfeit debt portfolios list consumer names and contact information along with social security and financial account numbers. For each consumer identified, the portfolios list detailed information about purported payday loans, such as alleged original loan amounts, loan dates, repayment histories, and unpaid balances.

15.     The counterfeit debt portfolios also list the purported originators of the payday loans. Some of the counterfeit debt portfolios list as originator a brand associated with recognized payday loan services, such as "500FastCash," a registered trademark of Red Cedar Services, Inc., used in advertising high-fee, short-term "payday" loans offered at various web sites, including 500fastcash.com. Some counterfeit debt portfolios list a fictitious entity, such as "Castle Peak," as the purported lender.

16.     These debt portfolios are counterfeit because in numerous instances, they list loans that the identified lenders have not, in fact, made to the identified consumers. Furthermore, Defendants have not purchased, or otherwise obtained, any rights to collect loan debts originated by the lenders listed in the counterfeit portfolios, nor have they engaged in any transaction that authorizes them to collect, sell, distribute, or transfer any valid loans originated by those lenders.

17.     Defendants knew or should have known that the debt portfolios listed debts that

consumers did not owe.

18.     Defendants knew or should have known that the lenders identified in the debt portfolios were fictitious or, if the lenders were genuine entities, that Defendants were not authorized to act as the lenders' agents and did not have authority to market debt originated by these lenders.

19.     Defendants knew or should have known that it was likely that the counterfeit portfolios would be given to debt collectors who would contact the listed consumers to demand payment on the purported debts.  Defendants knew or should have known that it was likely that some counterfeit portfolios would be used to submit claims demanding payment of the purported debts in estate and bankruptcy proceedings.

20.     Numerous consumers, directly or through bankruptcy proceedings, have been contacted by various debt collectors demanding repayment of purported debts listed in counterfeit portfolios distributed by Defendants.  These demands for repayment were made by debt collectors that received counterfeit portfolios marketed, transferred, or sold by Defendants.

21.     In numerous instances, debt collectors who received counterfeit portfolios marketed, transferred, or sold by Defendants have successfully induced consumers to pay the purported debts.

22.     Consumers cannot reasonably avoid this harm.  From the counterfeit portfolios, debt collectors obtain consumers' private personal information and sensitive financial information, including social security numbers, bank account numbers, and names of references. Debt collectors recite such information as proof that the purported loan is legitimate.  Given this detailed information, some consumers have made payments on the purported debt.

23.     Other consumers have paid the purported debts to stop the debt collection calls, or

because they were afraid of the repercussions of debt collectors reporting that they were delinquent in repaying a loan.

24.     Defendants have profited from the sale of counterfeit debt portfolios.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

25.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

26.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  15 U.S.C. § 45(a).

27.     Acts or practices are unfair under Section 5 of the FTC Act if they cause, or are likely to cause, substantial injury to consumers that consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## COUNT I
*Means and Instrumentalities to Mislead*

28.     In numerous instances, in connection with their marketing, distribution, and sale of purported payday loan debt portfolios, Defendants have represented, directly or indirectly, expressly or by implication, that consumers listed in those portfolios owe unpaid payday loan debts, and that those who obtain the portfolios through Defendants have the right to collect debts listed in the portfolios.

29.     In fact, the consumers listed in those portfolios that Defendants have marketed, distributed, and sold did not owe the purported debts, and collectors that obtained those portfolios did not have the right to collect those purported debts.

30.     By making the representations in Paragraph 28, Defendants placed in the hands of debt collectors the means and instrumentalities by and through which they may mislead consumers regarding their debt obligations.

31.     Therefore, Defendants' representations, as set forth in Paragraph 28 of this Complaint are false or misleading, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

*Distribution of Counterfeit Debt Portfolios for Collection*

32.     In numerous instances, Defendants' actions in distributing and selling counterfeit debt portfolios have caused or are likely to have caused substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

33.     Therefore, Defendants' practices, as described above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and (n).

## CONSUMER INJURY

34.     Consumers have suffered, or are likely to suffer, substantial injury because of Defendants' violations of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by the Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

35.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions and an accounting of debt portfolios distributed by Defendants;

B.      Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

TOM BEALL
Acting United States Attorney


\s Jason Oller_____
Jason Oller
Assistant United States Attorney
Ks. S.Ct. No. 24341
500 State Avenue
Suite 360
Kansas City, KS 66101
Telephone: (913) 551-6730
Facsimile: (913) 551-6541


Local Counsel for Plaintiff  Federal Trade
Commission

Dated: December 16, 2016

DAVID SHONKA
Acting General Counsel


\s Michael Tankersley_____
Michael Tankersley (pending pro hac admission)
D.C. Bar. No. 411978
Katharine Roller (pending pro hac admission)
Ill Bar. No. 6316909
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Mailstop CC-10232
Washington, DC 20580
Telephone: (202) 326-2991 (Tankersley)
Telephone: (202) 326-3582 (Roller)
E-mail: mtankersley@ftc.gov
E-mail: kroller@ftc.gov
Facsimile: (202) 326-3629


Attorneys for Plaintiff  Federal Trade
Commission